No. 24-7270

# United States Court of Appeals for the Ninth Circuit

COMMITTEE FOR A BETTER ARVIN, *et al*.,
*Petitioners*,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al*.,
*Respondents*,
and
CALIFORNIA AIR RESOURCES BOARD, *et al*.,
*Respondent-Intervenors.*

On Petition for Review of an Order of the
United States Environmental Protection Agency

**BRIEF OF AMICUS CURIAE SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT IN SUPPORT OF THE PETITIONS FOR REHEARING EN BANC**

BAYRON T. GILCHRIST
*General Counsel*
BARBARA BAIRD
*Chief Deputy Counsel*
BRIAN TOMASOVIC
DAPHNE HSU

Office of the General Counsel
South Coast Air Quality Mmgt. District
21865 Copley Drive
Diamond Bar, California 91765
909.396.3400; FAX 909.396.2961
dhsu@aqmd.gov

*Counsel for Amicus Curiae South Coast Air Quality Management District*

## DISCLOSURE STATEMENTS

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, amicus curiae hereby submit the following corporate disclosure statement: Amicus Curiae South Coast Air Quality Management District is a government entity.

No counsel for a party authored this brief in whole or in part, and no person other than the amicus curiae, its members or its counsel contributed money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

## TABLE OF CONTENTS

DISCLOSURE STATEMENTS ........ ii
TABLE OF CONTENTS ........ ii
TABLE OF AUTHORITIES ........ iii
IDENTITY OF AMICUS CURIAE AND ITS INTERESTS IN THE CASE ........ 1
INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1
I. The decision upends years of planning, demanding significant public resources to redevelop SIP submissions and promulgate additional rules, and increases the risk of catastrophic sanctions ........ 5
II. Regulators must be allowed to consider economic impact in order to avoid a regulatory taking ........ 9
III. Consideration of technological feasibility ensures that contingency measures are timely deployed ........ 11
IV. The EPA, air districts, and the public are left directionless as to what amount of progress is sufficient for approval of contingency measure plans ........ 12
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Coatings Assn. v. South Coast Air Quality Mgmt. Dist.*,
278 P.3d 838 (Cal. 2012) .......... 3

*Lingle v. Chevron U.S.A., Inc.*,
544 U.S. 528 (2005) .......... 2, 3, 9

*Penn Cent. Transp. Co. v. City of New York*.,
438 U.S. 104 (1978) .......... 2, 3, 9

**U.S. Constitution and Statutes**

42 U.S.C. § 7502 .......... 2, 4, 5
42 U.S.C. § 7509 .......... 8, 9
42 U.S.C. § 7511 .......... 2, 5
Cal. Health & Safety Code § 39002 .......... 1
Cal. Health & Safety Code § 40000 .......... 1
Cal. Health & Safety Code § 40001 .......... 1
Cal. Health & Safety Code § 40410 .......... 1
U.S. Const., amend. V .......... 3

**Regulations**

40 C.F.R. § 52.31 .......... 8
40 C.F.R. § 81.305 .......... 5, 12
83 Fed. Reg. 25776 (June 4, 2018) .......... 5, 11
88 Fed. Reg. 14291 (Mar. 8, 2023) .......... 5, 12
91 Fed. Reg. 62316 (Oct. 1, 2026) .......... 5, 12

**Other Authorities**

Cleanview, *Natural Gas Power Plants in California*, https://cleanview.co/power-projects/operating/natural-gas-power-plants/california .......... 10

EPA, *Guidance on the Preparation of State Implementation Plan Provisions that Address the Nonattainment Area Contingency Measure Requirements for Ozone and Particulate Matter,* https://www.epa.gov/system/files/documents/2024-12/cmtf-final-guidance-signature-version-11-22-24_clean_0.pdf .......... 9, 11, 13

South Coast AQMD, *Appendix V for the 2012 Annual PM 2.5 Plan*, https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/appendix-v---contingency-measures-infeasibility-justification.pdf ............ .6, 12

South Coast AQMD, *Board Letter for Proposed Amended Rule 1173 – Control of Volatile Organic Compound Leaks and Releases from Components at Petroleum Facilities and Chemical Plants,* https://www.aqmd.gov/docs/default-source/Agendas/Governing-Board/2024/2024-Nov1-022.pdf ............ 7

South Coast AQMD, *Final Staff Report for 2015 8-Hour Ozone Standard Contingency Measure*, https://www.aqmd.gov/docs/default-source/default-document-library/sc-contingency-measures-finalcb7e02f0c2b66f27bf6fff02004a91a9.pdf ............ 6, 7

South Coast AQMD, *Final Staff Report for the Coachella Valley Contingency Measure State Implementation Plan (SIP) Revision for the 2008 8-Hour Ozone Standard,* https://www.aqmd.gov/docs/default-source/clean-air-plans/ozone-plans/coachella-valley-contingency-measure-sip-revision/c-final-coachella-valley-contingency-sip-staff-report.pdf ............ 6

South Coast AQMD, Rule 1303 (Requirements), https://www.aqmd.gov/docs/default-source/rule-book/reg-xiii/rule-1303-requirements.pdf ............ 8

South Coast AQMD, *South Coast Air Basin Attainment Plan for the 2012 Annual PM2.5 Standard*, https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/2012-annual-pm2-5-plan.pdf ............ 10

South Coast AQMD, *South Coast Air Basin Attainment Plan for the 2012 Annual PM2.5 Standard, Appendix I, Base and Future Year Emission Inventory*, https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/appendix-i---emission-inventory.pdf ............ 10, 11

South Coast AQMD, *South Coast Air Basin Contingency Measure SIP Revision for the 2015 8-Hour Ozone NAAQS*, https://www.aqmd.gov/home/air-quality/air-quality-management-plans/other-state-implementation-plan-(sip)-revisions/south-coast-contingency-sip-revision-for-2015-8-hour-ozone-standard ............ 11

U.S. Department of Transportation, Federal Highway Administration, *Table 1: Computation of Apportionments Among States & Programs*, https://highways.dot.gov/iija/funding/fy-2026-computational-tables/table-1 ...... 9

## IDENTITY OF AMICUS CURIAE AND ITS INTERESTS IN THE CASE

*Amicus curiae* South Coast AQMD is a political subdivision of California responsible for comprehensive air pollution control in the Los Angeles metropolitan area and parts of surrounding counties that make up the South Coast Air Basin. Cal. Health & Safety Code § 40410. The South Coast AQMD is primarily responsible for the control of air pollution from all sources except vehicular sources within its jurisdiction. Cal. Health & Safety Code §§ 40000, 40001, 39002. The Basin is classified as in "serious" nonattainment for all federal ambient air quality standards for particulate matter, and in "extreme" nonattainment for all federal air quality standards for ozone—the worst classification for each of these pollutants.

South Coast AQMD has a particular interest in the outcome of this case, and it is adversely affected by the panel decision. South Coast AQMD has invested decades of resources in air quality management planning for its nonattainment areas. It has already submitted plans that include contingency measures, as authorized by the EPA's revised guidance, that do not obtain one year's worth of progress based on demonstrations that additional measures would be infeasible.

## INTRODUCTION AND SUMMARY OF ARGUMENT

South Coast AQMD supports the parties' petitions for *en banc* rehearing as the panel decision conflicts with Supreme Court jurisprudence on regulatory

takings, which allow lawmakers to consider economic impact when adopting rules. *See, e.g., Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528 (2005); *Penn Cent. Transp. Co. v. City of New York*. 438 U.S. 104 (1978). Further, the proceeding involves questions of exceptional importance: (1) Does the contingency measure provision in the Clean Air Act require consideration of the timing of implementation of any such measures when the purpose of such measures is to ensure emissions reductions before the attainment date; and (2) Should a review of the lawfulness of a "feasibility" demonstration be divorced from the context of "one year's worth" of progress?

Under the Clean Air Act, contingency measures are required for nonattainment areas generally and specifically for ozone nonattainment areas classified as "serious" or above. *See* 42 U.S.C. §§ 7502(c)(9), 7511a(c)(9). In striking down what the EPA may consider in approving contingency measure plans within the Ninth Circuit, the panel decision upends years of careful planning by South Coast AQMD developed with input from residents, community-based organizations, and businesses throughout Southern California. The panel admits as much when it remanded without vacating San Joaquin Valley's contingency measures, "given the potential disruptive consequences of the Valley lacking contingency measures while the EPA reconsiders this rule." Op. (Dkt. 72.1) at 22. Three South Coast AQMD plans, all of which CARB has submitted to the EPA for

inclusion into California's State Implementation Plan, included a feasibility demonstration. The ruling upsets these plans.

The EPA considered whether contingency measures were feasible based on technological and economic justifications. The panel strikes down the feasibility demonstration, without expanding on what considerations may be allowed under the Clean Air Act.

Prohibiting inquiry into the economic considerations when developing regulations runs contrary to the United States Constitution and Supreme Court precedent. *See Takings Clause*, U.S. Const., amend. V; *Lingle*, 544 U.S. at 538–40; *Penn Cent. Transp. Co*, 438 U.S. at 104. Unless regulators are allowed to consider economic impact, regulators may infringe on a person's property rights that are protected by the Takings Clause. South Coast AQMD typically requires the most stringent measures anywhere in the country to address poor air quality and strenuously defends its authority to impose technology-forcing requirements. *See American Coatings Assn. v. South Coast Air Quality Mgmt. Dist.*, 278 P.3d 838, 849–52, 860 (Cal. 2012). If measures beyond reason or feasibility are required, however, the ruling may halt Southern California's economy, prohibiting people from driving their cars or effectively shutting down manufacturing and industrial sources or electric utilities. The new ruling threatens to disrupt the economic base

and livelihoods of more than 17 million residents in Los Angeles, Orange, Riverside and San Bernardino counties.

The panel also denies technological feasibility arguments, without considering that technological feasibility ensures that contingency measures would be timely deployed. The purpose of contingency measures is "to continue progress in reducing emissions while a state revises its [state implementation plan]." Op. at 27 (Bress, J., dissenting.) Obviously, there would be *no* progress until new technology is actually implemented. A technological feasibility demonstration ensures that reductions are timely.

It is possible that the sweeping ruling may ultimately weaken environmental regulation. The feasibility demonstration allowed the EPA to approve a suite of contingency measures even if the measures were insufficient to meet one year's worth of emissions reductions. Yet, the majority analyzed "feasibility" in isolation. The panel "neither endorses nor rejects EPA's use of 'one year's worth of progress' instead of the longstanding one year's worth of reasonable further progress standard because this petition rises and falls on feasibility." Op. at 11, n. 4. The majority relied heavily on the fact that "feasibility" does not appear in the contingency measures provision. Op. at 12 – 13. Well, neither does the phrase "one year's worth" of progress. 42 U.S.C. § 7502(c)(9). Given the majority's parsing of statutory language, would the next step be to strike down the EPA's requirement of

"one year's worth" of progress in its entirety and deem any contingency measure sufficient, so long as it is more than nominal?

## I. The decision upends years of planning, demanding significant public resources to redevelop SIP submissions and promulgate additional rules, and increases the risk of catastrophic sanctions

South Coast Air Basin is classified as an "extreme" nonattainment area for ozone and "serious" nonattainment for particulate matter 2.5 ("PM 2.5"). *Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards*, 83 Fed. Reg. 25776, 25787–88 (June 4, 2018); *Attainment Date Extension for the South Coast, California 2012 Annual $PM_{2.5}$ Fine Particulate Matter Nonattainment Area*, 91 Fed. Reg. 62316, 62316, 62319 (Oct. 1, 2026); 40 C.F.R. § 81.305. Coachella Valley is classified as an "extreme" nonattainment area for the 2008 ozone standard. *Designation of Areas for Air Quality Planning Purposes; California; Coachella Valley Ozone Nonattainment Area; Reclassification to Extreme*, 88 Fed. Reg. 14291, 14291–92 (Mar. 8, 2023). Because the Basin and the Coachella Valley are in nonattainment, South Coast AQMD is required to develop plans that include contingency measures. *See* 42 U.S.C. §§ 7502(c)(9), 7511a(c)(9). These contingency measures are control requirements that "take effect" "without further action by the State or the Administrator." 42 U.S.C. § 7502(c)(9).

Currently, South Coast AQMD has three plans that substantiate its contingency measures are sufficient by relying on a feasibility demonstration. The plans for South Coast Air Basin for the 2015 8-hour ozone standard and the 2012 PM 2.5 standard rely on the demonstration.[1] So does the plan for Coachella Valley for the 2008 ozone standard.[2]

The real-world effect of the ruling is that South Coast AQMD will likely have to redevelop three contingency measure plans and conduct rulemaking. This is no small feat.

In a recent example, the 2025 contingency measure plan for the 2015 8-hour ozone standard in the South Coast Basin required one year of staff time. The final

---

[1] South Coast AQMD, *Final Staff Report, South Coast Air Basin Contingency Measure SIP Revision for the 2015 8-Hour Ozone NAAQS, Infeasibility Justification,* Chapter 4 (Aug. 2025) ("Final Staff Report for 2015 8-Hour Ozone Standard Contingency Measure"), available at https://www.aqmd.gov/docs/default-source/default-document-library/sc-contingency-measures-finalcb7e02f0c2b66f27bf6fff02004a91a9.pdf (accessed Oct. 1, 2026); South Coast AQMD*, South Coast Air Basin Attainment Plan for the 2012 Annual PM2.5 Standard*, Appendix V, Contingency Measures Infeasibility Justification (June 2024) ("Appendix V for the 2012 Annual PM 2.5 Plan"), available at https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/appendix-v---contingency-measures-infeasibility-justification.pdf (accessed Oct. 1, 2026).

[2] South Coast AQMD, *Final Staff Report for the Coachella Valley Contingency Measure State Implementation Plan (SIP) Revision for the 2008 8-Hour Ozone Standard* (March 2024), 4-1, available at https://www.aqmd.gov/docs/default-source/clean-air-plans/ozone-plans/coachella-valley-contingency-measure-sip-revision/c-final-coachella-valley-contingency-sip-staff-report.pdf (accessed Sept. Oct. 1, 2026).

staff report itself was more than 400 pages, much of it dedicated to documenting the feasibility of various measures.[3] The public process itself, which included opportunities for live and written comments, stretched over about four months.[4] For all the work and formal process that went into the plan, the South Coast AQMD received one comment letter. That comment letter from Earthjustice and Center for Biological Diversity did not ask that infeasible measures be adopted and contested instead that all feasible measures were implemented.[5]

Separately, and before the contingency measure plan was adopted, the South Coast AQMD adopted three rules that constituted part of the contingency measures.[6] In just one example, development of Rule 1173 (Control of Volatile Organic Compound Leaks and Releases from Components of Petroleum Facilities and Chemical Plants) took 11 months.[7] Four meetings, one workshop, one committee briefing, and two public hearings were held.[8] As seen from this single

[3] *Final Staff Report for 2015 8-Hour Ozone Standard Contingency Measure* at 5-1.
[4] *Id.* at 5-1.
[5] *Id*. at 5-2 to 5-4.
[6] *Id*. at 3-1 to 3-3.
[7] South Coast AQMD, *Board Letter for Proposed Amended Rule 1173 – Control of Volatile Organic Compound Leaks and Releases from Components at Petroleum Facilities and Chemical Plants* (Nov. 1, 2024), Attachment C, available at https://www.aqmd.gov/docs/default-source/Agendas/Governing-Board/2024/2024-Nov1-022.pdf (accessed Sept. 29, 2026).
[8] *Id.*

rule, rulemaking takes significant resources from members of the public, businesses, and the South Coast AQMD.

Given these timeframes (about two years in these examples) and the necessity for public input, it cannot be reliably assured that California can timely adopt any new rules and plans required to avoid sanctions. Given the panel's rejection of the feasibility demonstration, the EPA may disapprove these three plans. If submissions are not corrected within 18 months of EPA disapproval, mandatory offset sanctions begin, requiring the retirement of two tons of existing pollution for one ton any new business may emit. 42 U.S.C. § 7509; 40 C.F.R. § 52.31; Op. 54 (Bress, J., dissenting). (In the South Coast Air Basin, generally, new businesses are already required to have 1.2-to-1 offsets.)[9] This would stifle certain types of business development in California. Further, California risks losing federal highway funds 24 months after disapproval. In federal fiscal year 2026, the Federal Highway Administration apportioned approximately $5.26 billion for California.[10, 11]

---

[9] South Coast AQMD, Rule 1303(b)(2) (Requirements), available at https://www.aqmd.gov/docs/default-source/rule-book/reg-xiii/rule-1303-requirements.pdf (accessed Sept. 30, 2026).

[10] U.S. Department of Transportation, Federal Highway Administration, *Table 1: Computation of Apportionments Among States & Programs*, Part 1, available at https://highways.dot.gov/iija/funding/fy-2026-computational-tables/table-1 (accessed Sept. 29, 2026).

[11] Only certain funds awarded under Title 23 of the United States Code would be at risk. *See* 42 U.S.C. § 7509(b)(1).

## II. Regulators must be allowed to consider economic impact in order to avoid a regulatory taking

In striking down the "feasibility" determination, the panel focuses on the absence of the word in the Clean Air Act but fails to consider whether a determination of economic impact is required by the United States Constitution. The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not be "taken for public use, without just compensation." *Lingle*, 544 U.S. at 536. To avoid creating a regulatory taking, regulators must be able to consider "the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Id.* at 540, citing *Penn Cent. Transp. Co.*, 438 U.S. at 124. The EPA's contingency measure guidance on economic feasibility aligns with the requirement of Fifth Amendment jurisprudence; the guidance states that feasibility "depends on many fact-specific considerations" and "that there may be some upper limit relevant to costs."[12]

Nitrogen oxides ("Nox") are a significant precursor to PM 2.5. In the South Coast Basin, one year's worth of progress to attain the 2012 annual PM 2.5

---

[12] EPA, *Guidance on the Preparation of State Implementation Plan Provisions that Address the Nonattainment Area Contingency Measure Requirements for Ozone and Particulate Matter* (Dec. 3, 2024) ("EPA Guidance"), 43, https://www.epa.gov/system/files/documents/2024-12/cmtf-final-guidance-signature-version-11-22-24_clean_0.pdf (accessed Sept. 30, 2026).

standard would mean eliminating 7.92 tons per day of NOx. South Coast AQMD, *South Coast Air Basin Attainment Plan for the 2012 Annual PM2.5 Standard*, 6-33, https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/2012-annual-pm2-5-plan.pdf (accessed Sept. 30, 2026). NOx is a byproduct of combustion, and Southern California is powered in large part by the burning of natural gas at power plants. *See* Cleanview, *Natural Gas Power Plants in California*, available at https://cleanview.co/power-projects/operating/natural-gas-power-plants/california (accessed Sept. 24, 2026). Even if South Coast AQMD required the shutdown of all electric utilities (or required the immediate transition to zero-emission electricity generation), it would only achieve a fraction of the reductions needed to satisfy one year's worth of reductions. South Coast Air AQMD, *South Coast Air Basin Attainment Plan for the 2012 Annual PM2.5 Standard, Appendix I, Base and Future Year Emission Inventory*, 104, https://www.aqmd.gov/docs/default-source/clean-air-plans/pm2.5-plans/final-pm2.5-plan/appendix-i---emission-inventory.pdf (accessed Sept. 30, 2026) (utilities account for 2.48 tons of NOx). Other unworkable options would be to eliminate all NOx emissions from manufacturing and industrial sources, totaling 7.59 tons per day or eliminating nearly all passenger automobiles, totaling 9.14 tons per day. *Id.* at 104–05. It would run contrary to constitutional law to turn a

blind eye to the significant costs and economic impacts these regulations would have.

## III. Consideration of technological feasibility ensures that contingency measures are timely deployed

The purpose of contingency measures is to ensure reductions in emissions while the state formulates a new plan. Thus, timeliness of implementation is inherent. Per EPA guidance, South Coast AQMD has rejected contingency measures when it would take more than two years to implement from the triggering event. *See* EPA Guidance at 41. South Coast Basin's attainment date is in 2030 and 2037 for the annual 2012 PM 2.5 standard and the 2015 8-hour ozone standard, respectively.[13] The Coachella Valley attainment date for the 2008 8-hour ozone standard is in 2032.[14] A contingency measure would be a hollow promise if its effects were not felt until, let's say, 5 or 10 years later.

In one example of technological infeasibility, for the annual 2012 PM 2.5 standard, South Coast AQMD found that lowering NOx emissions from industrial and commercial boilers, steam generators, and process heaters (equipment subject

[13] South Coast AQMD, *South Coast Air Basin Contingency Measure SIP Revision for the 2015 8-Hour Ozone NAAQS*, available at https://www.aqmd.gov/home/air-quality/air-quality-management-plans/other-state-implementation-plan-(sip)-revisions/south-coast-contingency-sip-revision-for-2015-8-hour-ozone-standard (accessed Sept. 26, 2026); 83 Fed. Reg. at 25787–88; Fed. Reg. at 62316, 62319; 40 C.F.R. § 81.305.

[14] 88 Fed. Reg. at 14291–92; 40 C.F.R. § 81.305.

to South Coast AQMD's Rule 1146) was not feasible within a 2-year timeframe.[15] Lowering the NOx limit to 7 ppm or below is feasible only through replacement of existing burners with next-generation Ultra Low NOx Burners ("ULNB"). When combined with advanced Selective Catalytic Reduction ("SCR") technology, emission limits as low as 5 ppm may be achievable for units with heat input capacities greater than 10 MMBtu/hr. However, although these emission levels are theoretically achievable, such retrofits or replacements generally require more than two years to design, permit, procure, and implement. Therefore, further emission reductions from boilers, steam generators, and process heaters subject to Rule 1146 were not selected as a contingency measure.

## IV. The EPA, air districts, and the public are left directionless as to what amount of progress is sufficient for approval of contingency measure plans

In declaring feasibility demonstrations unlawful, the panel specifically left undecided whether contingency measure plans must show "one year's worth of progress" versus "one year's worth of reasonable further progress." Op. 11, n. 4. However, the purpose of the feasibility demonstration was to provide reasons why a contingency measure plan was approvable even though it did not meet the amount of emission reductions in a standard of progress. Since the panel did not resolve the issue, neither the petitioners nor the EPA nor the districts formulating

[15] Appendix V for the 2012 Annual PM 2.5 Plan at V-6 to V-15.

plans know how much emissions reductions must be achieved with contingency measures.

When striking down the feasibility demonstration, the panel's reasoning relies heavily on the fact that the "text of Section 172(c)(9) is silent on feasibility." Op. 12. But the statute is also silent on the amount of emission of reductions needed. "The EPA recognized that neither section 172(c)(9) nor section 182(c)(9) specifies how many measures are needed or the magnitude of emissions reductions that must be provided by these measures." EPA Guidance at 6 (quotations and brackets in original omitted). The continued uncertainty means litigation risk is high for contingency measure plans, and the decision burdens stakeholders with high transaction costs of reviewing and revising plans and amending and adopting rules without knowing the ultimate benchmark. It takes years to adopt contingency measures and to adopt a contingency measure plan. And the length of time summarized above in section I is based on normal circumstances and without the friction posed by attempting to adopt far-reaching, infeasible measures—measures that are, by certain logic, concededly arbitrary. Further, by relying heavily on the silence of statutory text and by declining to decide what amount of progress is required, the panel leaves open the possibility that less emissions reduction would be required than is currently envisioned by any of the parties. One can imagine a

textualist court rejecting that any magnitude of emissions reductions is required by the statute, given its silence.

## CONCLUSION

The panel decision has widespread effect, potentially severely impacting the Southern California economy, and intrudes upon Supreme Court jurisprudence on Takings. An *en banc* rehearing would ensure that questions of exceptional importance and any conflicts with Supreme Court precedent are fully addressed.

Date: October 1, 2026

Respectfully submitted,

BAYRON T. GILCHRIST, General Counsel
BARBARA BAIRD, Chief Deputy Counsel
BRIAN TOMASOVIC, Assistant Chief Deputy Counsel

s/ Daphne Hsu
DAPHNE HSU, Principal Deputy District Counsel
South Coast Air Quality Mgmt. District
21865 Copley Dr., Diamond Bar, CA 91765
909.396.3400; FAX 909.396.2961
dhsu@aqmd.gov

*Counsel for Amicus Curiae South Coast Air Quality Management District*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-7270

I am the attorney or self-represented party.

**This brief contains** 3,239 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Daphne Hsu **Date** October 1, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 24-7270

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Brief of Amicus Curiae South Coast Air Quality Management District in Support of the Petitions for Rehearing En Banc

**Signature** s/ Daphne Hsu **Date** Oct 1, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*